IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

ELIJAH EWELL,

    PLAINTIFF

    vs                           *FIRST AMENDED COMPLAINT*
                                 *CIVIL No.* 21 Civ 10290 (AJN) (OTW)

THE CITY OF NEW YORK, a municipal
entity, NEW YORK CITY POLICE OFFICER
DANIEL RAMOS, Shield # 17933, in his
individual and official capacities, NEW YORK
CITY POLICE OFFICER ANDRE BROWN,
in his individual and official capacities, NEW
YORK CITY POLICE DEPARTMENT
LIEUTENANT CESAR IMBERT, in his
individual and official capacities, NEW
YORK CITY POLICE DEPARTMENT
SERGEANT ROBERT VASSALLO, in his
individual and official capacities,

    DEFENDANTS
_____

    Plaintiff Elijah Ewell hereby and herein alleges, avers, and states:

## I. *INTRODUCTION*

1. This is a litigation which arises out of an incident that commenced on February 16, 2021 at or about 10:30 P.M. in the vicinity of Sound View Avenue and Watson Avenue, Bronx, New York

2. On that date Plaintiff Elijah Ewell was stopped and detained and thereafter arrested by Defendant New York City police officers Daniel Ramos (hereinafter referred to as õRamosö), Andre Brown (hereinafter referred to as õBrownö), and New York City Police Department Sergeant Robert Vassallo (hereinafter referring to õVassalloö), each of whom was acting in concert and conjunction with the other and with the approval of each other.

In association with his stop, detention and arrest, Plaintiff Elijah Ewell was subjected to an unlawful search of his person and his property and subjected to objectively unnecessary, unreasonable, and excessive force by the Defendant parties Ramos, Brown, and Vassallo, each of whom was acting in concert and conjunction with the other and with the approval of each other.

3.   There was no factual basis on which to form an objectively reasonable probable cause justification for the arrest of Plaintiff Elijah Ewell and the search of Plaintiff Elijah Ewell's person and property; or, prior thereto, no factual basis on which to form an objectively reasonable, non speculative suspicion for the stop and detention of Plaintiff Elijah Ewell and the driver of the car service vehicle in which Plaintiff Elijah Ewell was a passenger.

4.   On February 17, 2021, the Plaintiff was issued a Desk Appearance Ticket (DAT) by party Defendant Ramos, acting for an on behalf of himself and on behalf of party Defendants Brown and Vassallo.  Defendant party New York City Police Department Lieutenant Cesar Imbert (hereinafter referred to as ōImbertö) authorized and approved the stop and detention and arrest of Plaintiff Elijah Ewell and the issuance of the Desk Appearance Ticket associated therewith; and, as well, all of the actions by Defendants Ramos, Brown, and Vassallo associated with the stop, detention, and arrest of the Plaintiff including the search of Plaintiff Ewell and his property and the use of the force associated with the stop and detention and arrest including the excessively tight application of handcuffing force.

5.   On June 9, 2021, the Office of the Bronx County District Attorney declined to prosecute Plaintiff Elijah Ewell; and no accusatory instrument was drafted by the Office

of the Bronx County District Attorney associated with the arrest of Plaintiff Elijah Ewell and the issuance of the Desk Appearance Ticket (DAT) to him.

6.   This is an action in which Plaintiff Elijah Ewell seeks relief for the violation of rights guaranteed to him under the laws and Constitution of the United States.

7.   Plaintiff Elijah Ewell seeks monetary damages and such other relief, including injunctive relief and declaratory relief (if appropriate), as promotes the interest of justice and as may be required to assure that Plaintiff  Elijah Ewell secures full and complete relief and justice for the violation of his rights.

## II. *JURISDICTION*

8.   Plaintiff Elijah Ewell invokes the jurisdiction of this Court pursuant to and under 28 U.S.C. Sections 1331 and 1343  in conjunction with the Civil Rights Acts of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

9.   Plaintiff Elijah Ewell also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, *et seq.*, this being an action in which Plaintiff Elijah Ewell seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

10.   Plaintiff Elijah Ewell seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States.

### III.  *THE PARTIES*

A. *PLAINTIFF*

11. Plaintiff Elijah Ewell is African American citizen and resident of the City of New York, the County of the Bronx, and the State of New York. He presently resides with his mother in a building on Bruckner Boulevard which is part of the Sound View Housing complex that is maintained and operated by the New York City Housing Authority.

12. On the date of the February 16, 2021 incident, Plaintiff Elijah Ewell resided on Sound View Avenue in the County of the Bronx, the City of New York, and the State of New York.   The building on Sound View Avenue is, like the Plaintiff's present residence, part of the Sound View Housing complex that is maintained and operated by the New York City Housing Authority.

13.  Plaintiff Elijah Ewell resided at the Sound View Avenue address with his mother as he does at his present address.

14.  Plaintiff Elijah Ewell is twenty eight (28) years of age. He was twenty seven (27) years old on the date of the February 16, 2021 incident out of which this litigation arises.

15.  Plaintiff Elijah Ewell's birth date is October 4, 1993.

B. *DEFENDANTS*

16.  Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which, under the enabling law of the State of New York, has, among other powers, the power to maintain agencies for the purpose of carrying out the governmental functions of the City of New York including, as an agency of the City of New York, the New York City Police

Department which carries out law enforcement activities and functions for the City of New York.

17. Defendants Daniel Ramos, Shield # 17933, Andre Brown, Sergeant Robert Vassallo, and Lieutenant Cesar Imbert are New York City line and/or command police officers each of whom was involved in the stop, detention, and arrest of Plaintiff Elijah Ewell on February 16, 2201 and all associated therewith including the issuance of a Desk Appearance Ticket (DAT) to Plaintiff Elijah Ewell on February 17, 2021; and each of whom acted in conjunction and in concert and with the approval of the other during the February 16, 2021 incident and the post February 16, 2021 activities and actions associated therewith.

18. Although the actions and conduct hereinafter described were unlawful and wrongful and otherwise violated Plaintiff Elijah Ewell's rights as guaranteed under the laws and Constitution of the United States, the actions and conduct of each of the foregoing Defendant party New York City line and command police officers, individually and/or collectively and in concert one with the other and with the approval of each other, were taken in and during the course of his duties and functions as employees and agents of the City of New York and incidental to the otherwise lawful performance of their duties and functions as employees and/or agents of the City of New York.

19. Each of the Defendant party New York City line and/or command police officers is being sued in his individual and official capacities.

IV. *ALLEGATIONS*

20. This is a litigation which arises out of an incident that commenced on February

16, 2021 at or about 10:30 P.M. in the vicinity of Sound View Avenue and Watson Avenue, County of the Bronx, City of New York, and the State of New York.

21.  On that date  Plaintiff Elijah Ewell was stopped and detained (along with the driver of a car service vehicle) and thereafter was arrested by Defendant parties Ramos, Brown, and Vassallo, each of whom was acting in concert and conjunction with the other and with the approval of each other. In association with his stop and detention and arrest, Plaintiff Elijah Ewell was subjected to an unlawful search of his person and his property and subjected to objectively unnecessary, unreasonable, and excessive force by the Defendant parties Ramos, Brown, and Vassallo, each of whom was acting in concert and conjunction with the other and with the approval of each other

22.  There was no objectively reasonable non speculative factually based probable cause justification for the arrest of Plaintiff Elijah Ewell and for the search of Plaintiff Elijah Ewell¢s person and property; and there was no objectively reasonable non speculative factually based suspicion for the pre-arrest stop and detention of Plaintiff Elijah Ewell and for the stop and detention of the driver of the car service vehicle.

23.  On February 17, 2021, Plaintiff Elijah Ewell was, with the approval of party Defendant New York City Police Department Lieutenant Cesar Imbert, issued a Desk Appearance Ticket (DAT) by party Defendant New York City police officer Daniel Ramos who was listed in the Desk Appearance Ticket (DAT) as the arresting officer but who was acting for and on behalf of all of the party Defendant New York  City police officers including not only himself but as well party Defendants Brown, and Vassallo, each of whom was acting in conjunction and in concert with the others and with the approval of each other throughout the event including the stop and detention of Plaintiff

Elijah Ewell and of the driver of the car service vehicle in which Plaintiff Elijah Ewell was a passenger; including the arrest of Plaintiff Elijah Ewell and all associated with the stop, detention and arrest including the search of Plaintiff Elijah Ewell's person and property and the use of the force against Plaintiff Elijah Ewell and the issuance of a Desk Appearance Ticket (DAT) to Elijah Ewell.

24.   On June 9, 2021, the Office of the Bronx County, New York District Attorney declined to prosecute Plaintiff Elijah Ewell as a consequence of the February 16, 2021 stop, detention, arrest and search of Plaintiff Elijah Ewell and his property for which a February 17, 2021 dated Desk Appearance Ticket had been issued to Plaintiff Elijah Ewell; and no accusatory instrument was drafted or filed by the Office of the Bronx County, New York District Attorney with the Criminal Court of the City of New York, County of the Bronx, State of New York.

25.   This is an action in which Plaintiff Elijah Ewell seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States.

26.   Plaintiff Elijah Ewell seeks monetary damages and such other relief, including injunctive relief and declaratory relief (if appropriate), as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of his rights.

27.   Plaintiff Elijah Ewell is an African American citizen and resident of the City of New York, the County of the Bronx, and the State of New York.

28.   On February 16, 2021, Plaintiff Elijah Ewell resided on Sound View Avenue (between Watson Avenue and Bruckner Boulevard) in the County of Bronx, the City of New York, and the State of New York.

29.  On the date of the February 16, 2021 incident, Plaintiff Elijah Ewell resided at the Sound View Avenue address with his mother.

30.  Plaintiff Elijah Ewell is twenty eight (28) years of age. On the date of the February 16, 2021 incident, Plaintiff was twenty seven (27) years old.

31.  Plaintiff Elijah Ewell's birth date is October 4, 1993.

32.  Plaintiff Elijah Ewell was born and raised in the County of the Bronx, the City of New York, and the State of New York.

33.  Plaintiff Elijah Ewell attended elementary Public School # 93; middle school (junior high school) # 123; and thereafter and for a period of time the Bronx Leadership Academy High School until he moved to Atlanta, Georgia for a period of five months.

34. After residing in Atlanta, Georgia for five months, Plaintiff Elijah Ewell returned to the County of the Bronx, City of New York, and the State of New York.

35.  Plaintiff never graduated from high school although, subsequent to leaving high school before graduation, he obtained a GED certificate-diploma at the age of nineteen (19).

36.  Plaintiff Elijah Ewell has worked since he was fourteen (14) years old. Plaintiff Elijah Ewell worked during summer months commencing at fourteen (14) and continuing until he was nineteen years of age when he began working full time in various positions, among others as a driver and delivery person.

37.  On the date of the February 16, 2021 incident out of which this litigation derives, Plaintiff Elijah Ewell was unemployed and receiving unemployment insurance benefits. Plaintiff is presently gainfully employed after having searched out and having found

employment consistent with the conditions associated with his receipt of unemployment benefits that required him to make good faith efforts to secure employment (as he did).

38.  At or about 10:30 P.M. on February 16, 2021 Plaintiff Elijah Ewell, who was in the apartment where he resided with his mother, booked a car service from an app called Excellent which app was on his cell telephone.

39.  Plaintiff Elijah Ewell was going to the Ramada Inn hotel by Wyndham which was located at 1000 Bay Chester Avenue, Bronx, New York.

40.  Plaintiff Elijah Ewell was going to meet his girlfriend at the Ramada Hotel by Wyndham to spend time with her as a belated Valentine's Day celebration.

41.  Plaintiff Elijah Ewell left his residence on Sound View Avenue where he lived with his mother; and he went outside in front of his building where he was to meet the car service vehicle.

42.  The Sound View Avenue building where Plaintiff Elijah Ewell resided with his mother on that date is a residential building located on Sound View Avenue between Watson Avenue and Bruckner Boulevard.

43.  The Sound View Avenue residential housing complex building is a public housing complex building maintained and operated by the New York City Housing Authority which is part of the New York City government structure.

44.  The Sound View Avenue housing complex is  populated, overwhelming, by Black and brown residents of the City of New York, the County of the Bronx, the State of New York; many of whom are Black and brown males.

45.  The Sound View Avenue housing complex building is located in a Bronx County neighborhood which is populated, overwhelmingly, by Black and brown people as part of the lager racially segregated residential communities that make up the City of New York.

46.  The Sound View Avenue housing complex resident population is composed, overwhelmingly, of up-right working poor Black and brown citizens (individuals and families) of the nation and of the City of New York, the County of the Bronx, and the State of New York.

47.  Plaintiff Elijah Ewell left his apartment where he resided with his mother and met the car service vehicle outside of the building on Sound View Avenue between Watson Avenue and Bruckner Boulevard.

48.  The car service vehicle was being driven by a person of color (Black/brown) whose name was Musa, S.

49.  The car service vehicle was a white Toyota- Camry; Company Kiss # 375; plate number T771318C.

50.  Plaintiff Elijah Ewell entered into the car service vehicle.

51. The driver of the car service vehicle left the location.

52. The car service vehicle driver drove a short distance to Watson Avenue  (about one block from the location where he picked up Plaintiff Elijah Ewell outside of the Sound View Avenue housing complex building location between Watson Avenue and Bruckner Boulevard) where he made a turn onto Watson Avenue.

53.  At that point, only a short distance (one block) from where Plaintiff Elijah Ewell entered into the car service vehicle and perhaps within one minute or thereabouts after the vehicle left the location in front of the Sound View Avenue residential building location,

the car service vehicle diver was pulled over by three uniformed New York City police officers who were in an unmarked black vehicle.

54.  The car service vehicle driver was pulled over on Watson Avenue parallel to a gas station across the street from the gas station.

55.  The officers, all of whom were male and all of whom appeared to be Latino (two of whom were of a lighter complexion and one of whom was of a darker complexion), approached the vehicle.

56.  As it turned out although Plaintiff Elijah Ewell did not know such at the time, the three uniformed officers were party Defendants Ramos, Brown, and Vassallo.

57.  Defendant party Ramos was one of the two lighter complexion Defendant party New York City police officers. The other of the two lighter complexion party Defendant New York City police officers is believed to be Defendant party Sergeant Vassallo. The third party Defendant, who was a darker complexion individual, is believed to be Defendant party New York City police officer Andre Brown.

58.  Plaintiff Elijah Ewell was sitting in the back seat of the car service vehicle (behind the front passenger seat of the car service).

59.  The window next to which Plaintiff Elijah Ewell was sitting was approximately half way down.

60.  When Plaintiff Elijah Ewell entered into the car service vehicle Plaintiff Elijah Ewell placed on the seat next to him what he would describe as a black Nike book bag that Plaintiff Elijah Ewell had with him when he left his residence in the Sound View Avenue residential building and entered into the car service vehicle at the Sound View Avenue location.

61.  Inside of the Nike bag were a bottle of Hennessey liquor and a bottle of Bellaire champagne.

62.  In addition, the Nike bag contained Plaintiff Elijah Ewell's cell telephone charger; a hair brush, a hair comb, some lotion, deodorant, and a change of clothes consisting of a shirt and boxer shorts.

63.  There were no weapons of any kind in the bag and no illegal substances (drugs or otherwise).

64. Plaintiff Elijah Ewell possessed no weapon and no contraband (drugs or otherwise) on his person

65. The liquor and champagne were for the celebration which Plaintiff Elijah Ewell and his girlfriend were to have at the Ramada Inn hotel at Wyndham on Bay Chester Avenue in the Bronx (the destination of the car service ride).

66.  Plaintiff Elijah Ewell was doing nothing suspicious or otherwise when the uniformed Defendant New York City police officers approached the car service vehicle.

67.  The only thing Plaintiff Elijah Ewell was doing was sitting in the vehicle.

68.  Furthermore, Plaintiff Elijah Ewell had done nothing suspicious whatsoever when he entered into the car service vehicle on Sound View Avenue approximately one minute prior to the car service vehicle being stopped.

69.  It is believed that, before the car service vehicle arrived at the Sound View Avenue housing complex and before Plaintiff Elijah Ewell left the Sound View Avenue housing complex building in which he resided and then entered into the car service vehicle outside of the Sound View  Avenue housing complex building and before the car service vehicle was thereafter stopped on Watson Avenue a very, very short distance from the

Sound View Avenue housing complex, party Defendants Ramos, Brown, and Vassallo were situated in their unmarked black New York City Police Department vehicle outside of the Sound View housing complex observing and watching the Sound View  housing complex building in which Plaintiff Elijah Ewell resided.

70.   It is believed that the party Defendants Ramos, Brown, and Vassallo were observing the building because they believed that, notwithstanding that the overwhelming number of the Black and brown residents of the building were law abiding and hard working and up-right citizens, there were people going into and out of the Sound View Avenue complex building who *might* be engaged in unlawful conduct (including possessing weapons and drugs).

71.  However party Defendants Ramos, Brown, and Vassallo had no specific and particular reason to believe or reasonably suspect that any one of the Black and brown person, going into or out of the Sound View Avenue housing complex building out of which Plaintiff Elijah Ewell exited, was engaged in any kind of wrongful and/or unlawful conduct, including that Plaintiff Elijah Ewell was engaged in any kind of wrongful and/or unlawful conduct.

72.  In fact, Plaintiff Elijah Ewell was doing nothing suspicion nor appearing suspicious.

73.  The only thing he was doing was being a Black male coming out of the Sound View Avenue housing complex building carrying a black Nike bag.

74.  Those circumstances did not provide a reasonable, non speculative suspicion to stop and detain Plaintiff Elijah Ewell on the sidewalk or in the car service vehicle once he entered into the car service vehicle.

75.  The party Defendants Ramos, Brown and Vassallo believed that, although the vast number of car service vehicle drivers were engaged in legitimate lawful enterprise when driving the car service vehicles and were not engaged in wrongful or unlawful conduct, there were some very few car service vehicle drivers who knowingly facilitated wrongful or unlawful conduct of the passengers in the car service vehicle which he was driving.

76.  The party Defendants, Ramos, Brown, and  Vassallo also knew that the overwhelming number of car service vehicle drivers, who drove in the Sound View Avenue community of the Bronx, were Black and brown males (as was the car service vehicle driver of the vehicle in which Plaintiff Elijah Ewell entered into).

77.  However party Defendants Ramos, Brown, and Vassallo did not have any specific and particular non speculative reasonable fact basis to suspect that the Black/brown car service vehicle driver of the vehicle into which Plaintiff Elijah Ewell entered was knowingly engaging in wrongful and unlawful activity when he picked up Plaintiff Elijah Ewell outside of the Sound View Avenue housing complex building.

78. Certainly being a Black/brown car service vehicle driver is not a reasonable fact based predicate to form an objective reasonable, non speculative suspicion to stop and detain the driver to investigate either the passenger or the driver himself.

79.  After the car service vehicle was stopped on Watson Avenue by party Defendants Ramos, Brown, and Vassallo, two of the  party Defendant New York City police officers approached the car service vehicle on the left side (driver's side); and one approached the vehicle on the passenger side.

80.  Defendant party Ramos, who was one of the two party Defendant New York City police officers of lighter complexion, and party Defendant Brown, who it is believed was

the party Defendant New York City police officer of darker complexion, were the two Defendant party New York City officers that approached the driver's side of the car service vehicle; and Defendant party Sergeant Vassallo, who it is believed was one of the two party Defendant New York City police officers of lighter complexion, was the party Defendant New York City police officer that approached the passenger side of the car service vehicle.

81.   Plaintiff Elijah Ewell heard the car service vehicle driver ask the party Defendant New York City police officers who had approached his side of the vehicle what was the problem.

82.   Plaintiff Elijah Ewell heard the two party Defendants (Ramos and Brown) speaking to the driver about why he had been stopped.

83.   Plaintiff Elijah Ewell heard the party Defendant officers saying something to the car service vehicle driver about a vehicle license plate and a tail light defect.

84.   Plaintiff Elijah Ewell believes that the asserted license plate and tail light matters were a pretext for the reason that the party Defendants stopped the car service vehicle.

85.   Plaintiff does not believe that the car service vehicle driver was issued any kind of summons or citation for any vehicle defect (license plate, tail light, or otherwise) before the party Defendants Ramos, Brown, and Vassallo left the location on Watson where the vehicle stop occurred and where Plaintiff Elijah Ewell was taken into custody and transported to the New York City Police Department's 43rd Precinct facility.

86.   The party Defendants Ramos, Brown, and Vassallo, working together and in concert and conjunction with each other and with the approval of each other, stopped the car service vehicle because of racial profiling; they stopped the car service vehicle driver

and Plaintiff Elijah Ewell simply because party Defendants Ramos, Brown, and Vassallo had previously observed a Black/brown car service vehicle driver pick up an African American passenger (Plaintiff Elijah Ewell) who had entered into the car service vehicle with a black Nike bag outside of the Sound View Avenue housing complex; and the totally speculative, non fact based unjustified suspicion of party Defendants Ramos, Brown, and Vassallo that the passenger (Plaintiff Elijah Ewell) and/or the car service driver were engaged in an unlawful activity related to weapons and/or drugs or otherwise; and not because of a legitimate justification based on any asserted license plate infraction and/or vehicle tail light infraction or other vehicle infraction and/or based on any actions and conduct of either the car service vehicle driver or Plaintiff Elijah Ewell, individually and/or collectively together.

87. After the car service vehicle was stopped and the party Defendants Ramos., Brown, and Vassallo exited their unmarked New York City Police Department vehicle and approached the car service vehicle as previously described, Plaintiff Elijah Ewell heard the party Defendant New York City police officer, who was on Plaintiff Elijah Ewell's side of the car service vehicle (believed to be party Defendant Vassallo), state to party Defendants Ramos and Brown, who were on the driver's side of the car service vehicle, that Plaintiff Elijah Ewell did not have his seatbelt on.

88. It is clear, however, that party Defendants Ramos, Brown, and Vassallo did not know at the time that the car service vehicle was stopped whether Plaintiff Elijah Ewell was wearing his seatbelt prior to the vehicle being stopped and while the vehicle was moving for perhaps one minute until the car service vehicle was stopped at the Watson Avenue location across the street from a gas station (about one block from the location at

which Plaintiff Elijah Ewell entered into the car service vehicle) and party Defendant

Vasallo got out of the New York City Police Department vehicle and walked to the

passenger side of the car service vehicle.

89.  Moreover, party Defendants Ramos, Brown, and Vassallo  New York City police

did not know whether or not Plaintiff Elijah Ewell had been wearing his seat belt after he

entered into the car service vehicle and during the approximately one minute that the car

service vehicle had been moving before the vehicle was stopped by the party Defendant

New York City police officers on Watson Avenue; and whether Plaintiff Elijah Ewell had

unfastened the seatbelt when the car service vehicle was stopped.

90.  Plaintiff Elijah Ewell heard the party Defendants on the driver's side of the car

service vehicle (Ramos and Brown) direct the car service vehicle driver to step out of the

vehicle.

91.   Plaintiff Elijah Ewell observed the car service vehicle driver immediately comply

with the directive to step out of the vehicle.

92.  Plaintiff Elijah Ewell observed party Defendant Ramos come around to the

passenger side of the vehicle while the car service vehicle driver and party Defendant

Brown went together to the trunk area of the car service vehicle.

93.  Defendant parties Ramos and Vassallo approached Plaintiff Elijah Ewell's door as

Plaintiff Elijah Ewell was fastening his seat belt.

94.  Defendant Vassallo flashed a light inside of the vehicle as he approached the rear

passenger side door next to which Plaintiff Elijah Ewell was sitting.

95.  When Plaintiff Elijah Ewell had previously heard the reference by the party

Defendant New York City police officers to his seat belt, he immediately fastened such.

96. Elijah Ewell fastened it innocently and without intent to cause a problem and certainly without any design to interfere with any police activities related to the stop of the car service vehicle the operation of which Plaintiff Elijah Ewell had nothing to do with since he was innocently inside the car service vehicle as a passenger whose design was to meet his girl friend at the Ramada Hotel at Wyndham on Bay Chester Avenue in the Bronx.

97. Plaintiff Elijah Ewell recalls that the car service vehicle driver was at the back of the car service vehicle by the trunk of the vehicle with party Defendant Brown when Plaintiff Elijah Ewell fastened his seatbelt.

98. When party Defendant Vassallo said to party Defendants Ramos and Brown that Plaintiff Elijah Ewell was not wearing his seatbelt, Plaintiff Elijah Ewell heard the car service vehicle driver state that, if there was an issue about the seatbelt, the party Defendant officers should give him the ticket for any seat belt violation.

99. At or about the point in time that party Defendant Vassallo was shining the light in the back of the car service vehicle, Plaintiff Elijah Ewell, who had his cell telephone in his hand,   commenced the cell telephone recorder.

100. Defendant party Vassallo directed Plaintiff Elijah Ewell to get out of the car service vehicle.

101. Plaintiff Elijah Ewell felt anxious; he felt nervous; he felt fearful.

102. Plaintiff Elijah Ewell felt anxious and nervous and fearful because he was doing absolutely nothing wrong yet alone criminal or unlawful; and he was simply sitting in a car service vehicle as a passenger on his way to a specific designation to meet his girlfriend.

103.  Plaintiff Elijah Ewell had done nothing unlawful or remotely criminal

104. His fastening of the seatbelt was an innocent, non threatening act propelled simply by the fact that party Defendant Vassallo had mentioned to his colleagues Plaintiff Elijah Ewell was not then wearing a seatbelt.

105.  When party Defendant Vassallo directed Plaintiff Elijah Ewell to get out of the car service vehicle, Plaintiff Elijah Ewell felt anxious, nervous and fearful as an African American male engaged in an inter-action with armed New York City police officers; and he was very concerned that any kind of movement he made could result in him being shot and killed.

106.  Plaintiff Elijah Ewell was justified in his anxiety and nervousness and fear because of the history of the killing of unarmed African Americans by law enforcement officers both in New York City and the nation at large and especially with the onset of the Black Lives Matter movement birthed as a result of recent multiple pre-February, 2021 shootings of unarmed African American men and women by law enforcement officers in various communities throughout the nation.

107.  Because of his justified anxiety and nervousness, Plaintiff Elijah Ewell was afraid to reach over to unbuckle his seatbelt in order to get out of the car service vehicle as Plaintiff Elijah Ewell had been directed to do by party Defendant Vassallo for fear that the movement would cause the party Defendant New York City police officers to misconstrue his movement and therefore cause the party Defendant New York City police officers to draw their weapon and shoot Plaintiff Elijah Ewell.

108.  Because of his justified anxiety and nervousness, Plaintiff Elijah Ewell was afraid to even say anything to the party Defendant New York City police officers for fear he

would provoke the party Defendant New York City police officers with dire consequences to his very life.

109.   Within moments after Defendant party Vassallo directed Plaintiff Elijah Ewell to get out of the car service vehicle, party Defendant Vassallo then opened the door by which Plaintiff Elijah Ewell was sitting while yelling at Plaintiff Elijah Ewell that he was õnot playingö with Plaintiff Elijah Ewell.

110.  Defendant party Vassallo reached into the car service vehicle, over Plaintiff Elijah Ewelløs body, and unfastened Plaintiff Elijah Ewelløs seatbelt.

111.  Plaintiff Elijah Ewell was anxious and frightened.

112.  Plaintiff Elijah Ewell did nothing to resist the action of party Defendant Vassallo.

113.  Plaintiff Elijah Ewell was compliant when party Defendant Vassallo reached into the vehicle and unfastened the seatbelt.

114.  At or about this point in time party Defendant Brown had moved from the driverøs side of the car service vehicle, where he had been standing by the car service vehicle trunk with the car service vehicle driver, to the passenger side of the car service vehicle where party Defendants Ramos and Vassallo were situated (leaving the car service vehicle driver at the driver side trunk location).

115.   Defendant party Brown went to the vicinity of the back seat passenger side of the vehicle where party Defendants Ramos and Vassallo were situated.

116.  Defendant party Brown reached through the partially opened rear car service vehicle passenger  side window and grabbed Plaintiff Elijah Ewelløs arm twisting it backwards toward Plaintiff Elijah Ewelløs back in an effort to seize Plaintiff Elijah Ewelløs cell telephone which Plaintiff Ewell was holding in his hand and on which

Plaintiff Elijah Ewell was recording what was transpiring, the latter of which (the recording) was perfectly innocent and lawful and, candidly, wise (or perhaps not because it could have been provoking the party Defendant New York City police officers notwithstanding that it was a lawful activity).

117.  At the same time and after reaching into the car service vehicle, Defendant party Vassallo grabbed Plaintiff Elijah Ewell forcefully propelling Plaintiff Elijah Ewell out of the car.

118.  At or about the same time party Defendant Ramos placed his arm on Plaintiff Elijah Ewell's neck while punching Plaintiff Elijah Ewell in his ribs and stomach.

119.  Once the Plaintiff Elijah Ewell was fully out of the vehicle and his cell telephone was seized, Plaintiff Elijah Ewell was moved to the side of the car service vehicle.

120.  Plaintiff Elijah Ewell was subjected to a frisk search.

121.  Furthermore, the party Defendant New York City police officers reached into Plaintiff Elijah Ewell's pockets.

122.  No weapons or contraband was found on Plaintiff Elijah Ewell's body or in his pockets.

123.  Such was the case because the Plaintiff was not in possession, on his body or otherwise, of any weapons or contraband.

124.  Moreover such is not surprising as Plaintiff Elijah Ewell did nothing whatsoever to create a non speculative objectively reasonable basis to believe he was possessing a weapon or contraband, unless of course, being African American and nothing else creates an objectively reasonable basis to suspect that the individual was in possession of a weapon or contraband which it does not do.

125.  In fact, this Court has held that the City of New York had a racist and racially discriminatory unconstitutional stop and frisk policy employed and directed at Black and brown residents of the City of New York (largely male); and it directed an end to that policy several years ago in the recent past.

126.  Notwithstanding such, line and command officers continue to engage in unjustified stops and frisk utilizing the pretext of a legitimate stop óoften in the context of traffic stops for made up minor traffic violations (turns without a signal, a defective tail light) for the purposes, then of engaging in frisks of the individuals to seize weapons (or often times not to seize weapons because there were no weapons).

127.  It is believed that the command structure at the New York City Police Departmentøs 43rd Precinct in the Bronx, New York, to which party Defendants Ramos, Brown, and  Vassallo are assigned and including as part of the command structure party Defendants Sergeant Vassallo and Lieutenant Cesar Imbert, and the command structure of the New York City Police Department as a whole have, as a matter of policy, been lax if not totally missing in action respecting the effective monitoring of the dismantling of the stop and  frisk policy that this Court had previously ruled to be racially discriminatory and unconstitutional.

128.  It is believed that the deficient oversight and monitoring of the dismantling of the unconstitutional and racist and racially discriminatory unconstitutional stop and frisk reflects a systemic New York City Police Department policy in and of itself policy.

129.  It is believed that the actions and conduct of party Defendants Ramos, Brown, and Vassallo, and the conduct of party Defendant New York City Police Department Lieutenant Cesar Imbert were propelled by a reckless and deliberately indifferent

deficiency in the oversight and monitoring of the dismantling of the previously held unconstitutional racist and racially discriminatory stop and frisk policy of the City of New York.

130.  In addition to frisking and searching Plaintiff Elijah Ewell as described, Plaintiff Elijah Ewell's black Nike bag, which was on the back seat of the car service vehicle, was searched by the party Defendant New York City police officers.

131.  There were no weapons or contraband in the bag and the search produced no weapons or contraband.

132.  Again such was not surprising because there was nothing whatsoever on which to base a non speculative, non racist objectively reasonable suspicion that there was any weapon or contraband in Plaintiff Elijah Ewell's black Nike bag.

133.  In searching Plaintiff Elijah Ewell's bag, the party Defendant New York City police officers pulled everything out of the bag and taunted him about "having a good night"  because he had liquor and champagne in the bag.

134.  Plaintiff Elijah Ewell was placed in the unmarked black vehicle from which the party Defendant New York City police officers had exited when they stopped the car service vehicle on Watson Avenue.

135.  Approximately ten minutes if that elapsed from the time the car service vehicle was stopped on Watson Avenue until Plaintiff Elijah Ewell was placed in the police vehicle by the party Defendant New York City police officers and the vehicle left the location.

136.  It is believed that, during the period that the event was transpiring, a marked New York City police car came on the scene as did what Plaintiff Elijah Ewell believes was an unmarked New York City police car.

137.  Plaintiff Elijah Ewell does not believe that the car service vehicle driver was issued any citation for any vehicle violation during the stop as described.

138.  Plaintiff Elijah Ewell was handcuffed behind his back before he was placed in the New York City Police Department unmarked police car.

139.  Plaintiff  Elijah Ewell was transported by the party Defendant New York City police officers  in the New York City Police Department unmarked police car to the 43rd Precinct which is located on 900 Fteley Avenue, Bronx, New York.

140.  The transport consumed approximately five minutes.

141. During the transport Plaintiff Elijah Ewell complained about the tightness of the handcuffs.

142.  Plaintiff Elijah Ewell was suffering acute pain as a consequence of the tightness of the handcuffs.

143.  Nothing was done by the party Defendant New York City police officers to provide Plaintiff Elijah Ewell any relief from the extremely tight handcuffs.

144.  During the transport from the Watson Avenue location to the 43rd Precinct, the party Defendant New York City police officer engaged in further taunting banter directed at Plaintiff Elijah Ewell.

145.  Other than for complaining about the tightness of the handcuffs and the pain he was enduring, Plaintiff Elijah Ewell said nothing in response to the taunting banter of the

party Defendant New York City police officers during the transport of Plaintiff Elijah Ewell from the Watson Avenue location to the 43rd Street Precinct facility.

146.  The taunting included words such as "you think you're a tough guy" and "you acted like you had a gun".

147.  Although nothing could be further from the truth -whatever "tough guy" means and whatever "you acted like you had a gun" means-, Plaintiff Elijah Ewell did not respond except to say that the party Defendant New York City police officers would hear from his attorney.

148.  Plaintiff Elijah Ewell arrived at the 43rd Precinct facility and was brought inside of the building.

149.  Plaintiff Elijah Ewell was brought to the front desk where he was forcibly propelled into the desk.

150.  Other officers in the Precinct facility acted antagonistically toward Plaintiff Elijah Ewell stating various things including that "you're not going anywhere."

151.  Plaintiff Elijah Ewell did not respond to the verbal comments and remained compliant.

152.  Plaintiff Elijah Ewell recalls that the desk officer was a Latino individual of fair complexion.

153.  It is believed that the desk officer was party Defendant New York City Police Department Lieutenant Cesar Imbert.

154.  Although Plaintiff Elijah Ewell was being taunted when he was at the desk by 43rd Precinct officers,  party Defendant New York City Police Department Lieutenant Cesar Imbert did nothing whatsoever to reprimand the taunting New York City police officers

or to direct them to cease and desist in their words and conduct which conduct was a clear violation of the New York City Police Department's policy that demand that its officers perform their duties and functions in a manner and fashion which reflected courtesy, professionalism, and respect toward the members of the public, including among others Plaintiff Elijah Ewell, whom members of the force were sworn to serve.

155. The failure of party Defendant New York City Police Department Cesar Imbert to reprimand the taunting New York City 43rd Precinct officers as described reflected an explicit approval of their disrespectful, unprofessional, less than courteous attitudes and conduct which explicit approval created a tolerance for unprofessional conduct by the 43rd Precinct police officer force membership which, in turn, infected the general conduct and activities of the 43rd Precinct New York City police Department force membership, among them party Defendants Ramos, Brown and command officer Sergeant Vassallo, the latter of whom were present when the taunting of Plaintiff Elijah Ewell at the desk area was occurring (with the approval of  party Defendant New York City Police Department Lieutenant Cesar Imbert).

156.  While at the desk area when Plaintiff Elijah Ewell was brought before party Defendant New York City Police Department Lieutenant Cesar Imbert, party Defendant Lieutenant Cesar Imbert made little, if any, inquiry of the party Defendant New York City police officers Ramos, Brown, and Vassallo about the circumstances of the arrest and/or the well being of Plaintiff Elijah Ewell.

157.  Moreover, party Defendant New York City police officers Ramos, Brown, and Sergeant Vassallo, then before the Precinct desk, described little if any of the events which  transpired and out of which the party Defendants Ramos, Brown, and Sergeant

Vassallo, each individually and each collectively together and in conjunction and concert with each other and the approval of each other, stopped  and detained the car service vehicle driver and Plaintiff Elijah Ewell (the passenger) and, associated therewith, forcibly removed the Plaintiff from the car service vehicle, beat on him, arrested Plaintiff Elijah Ewell, excessively handcuffed him tightly and refused to address his expressed pain, and searched Plaintiff Elijah and his property,

158.  Moreover, while before the desk, the party Defendant New York City police officers described little if anything about the reason why the car service vehicle was stopped and stated nothing about issuing, or not issuing as was the case, any citation to the car service vehicle driver for any vehicle infractions that supposedly was the reason for their stop of the car service vehicle driver and Plaintiff Elijah Ewell as the sole passenger in the car service vehicle.

159.  Plaintiff Elijah Ewell was taken from the desk area to a back room where he was photographed and fingerprinted.

160.  Plaintiff Elijah Ewell's Nike bag and the belongings in it were placed on a bench.

161.  Plaintiff was placed in a cell and remained in the cell until approximately 1:30 A.M. on February 17, 2021 when he was released with a Desk Appearance Ticket (DAT).

162.  The Desk Appearance Ticket (DAT) indicated that party Defendant Ramos was the designated arresting officer.

163.  Although party Defendant Ramos was listed as the designated arresting officer of Plaintiff Elijah Ewell, party Defendant Ramos was acting not only for himself but as well for and on behalf of party Defendant Brown, and Sergeant Vassallo who acted with and in conjunction and concert with party Defendant Ramos and with the approval of each

other; and, thereafter, with the approval of party Defendant Lieutenant Cesar Imbert who was the designated 43rd Precinct desk officer and who authorized and approved the issuance of the Desk Appearance Ticket (DAT) to Plaintiff Elijah Ewell notwithstanding that he knew or should have known that there was no basis whatsoever for the stop and detention of the Plaintiff and the car service driver and the arrest of Plaintiff Elijah Ewell and for the issuance of the Desk Appearance Ticket (DAT) by the party Defendants Ramos, Brown, and Vassallo.

164.  Per the Desk Appearance Ticket (DAT) which Plaintiff Elijah Ewell received, Plaintiff Elijah Ewell was directed to appear Bronx County Criminal Court at 215 East 161st Street, Bronx, New York on May 17, 2021.

165.  Plaintiff Elijah Ewell was informed in the Desk Appearance Ticket (DAT) that, if he failed to appear on the designated date, a warrant would be issued for Plaintiff Elijah Ewell's arrest and an additional charge could be referred against him subjecting Plaintiff Elijah Ewell to further penalty under law.

166.  Plaintiff Elijah Ewell was charged with Obstruction of Governmental Administration as set forth in Section 195.05 of the New York State Penal Law.

167.  Obstruction of Governmental Administration is a class "A": Misdemeanor under the Penal Law of the State of New York.

168.  Under Section 195.05 of the New York State Penal Law "a person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official functions, by means of intimidation, physical force or interference, or by means of any independently unlawful

act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor's intent that the animal obstruct governmental administration."

169.  Plaintiff Elijah Ewell did nothing  that remotely reflects any intent to  interfere with, impair, pervert, or obstruct governmental administration or that attempted to do so or that attempted to prevent the party Defendants, Ramos, Brown, and Vassallo from performing their official functions.

170.  To the contrary, he was simply sitting in the back passenger seat of a car service vehicle scared to death that any movement on his part or any words whatsoever by him placed his life at risk by the utilization by the party Defendant New York City police officers of unnecessary and unreasonable force including deadly force.

171.  Fortunately and as it turned out, Plaintiff Elijah Ewell was not subjected to the utilization by the party Defendants  Ramos, Brown, and Vassallo of deadly force although they  "were not playing" when they utilized objectively unreasonable and unnecessary and excessive force against Plaintiff Elijah Ewell when the party Defendants Ramos, Brown, and Vassallo removed Plaintiff from the car service vehicle and arrested him, beat him up,  and excessively handcuffed him before transporting him to the New York City Police Department's 43rd Precinct facility for his post arrest processing.

172.  Furthermore, Plaintiff Elijah Ewell did nothing whatsoever that could be reasonably considered to be a violation of any provision of law– criminal or otherwise.

173.  At the bottom line, Plaintiff Elijah Ewell was stopped and detained and forcibly removed from a car service vehicle where he was a passenger and thereafter subjected to a search of his person and his property and thereafter arrested and beat up and excessively and forcibly handcuffed simply for being Black and riding as a passenger in a car service vehicle operated by a Black/brown car service driver on the way to meet his girlfriend and celebrate, belatedly, Valentine's Day.

174.  Before the Desk Appearance Ticket (DAT) was issued by party Defendant Ramos for and on his behalf and on behalf of his fellow arresting officers party Defendant New York City police officer Brown and Sergeant Vassallo who acted in conjunction and concert with party Defendant Ramos,  and with the approval of party Defendant New York City Police Department Lieutenant Cesar Imbert,  party Defendant New York City Police Department Lieutenant Cesar Imbert made no meaningful inquiry if any at all of party Defendant New York City police officers Daniel Ramos and Brown and Vassallo about the circumstances leading up to the arrest of Plaintiff Elijah Ewell.

175.  Yet he approved the issuance of the Desk Appearance Ticket (DAT) and by such and explicitly the stop and detention of Plaintiff Elijah Ewell and the arrest of Plaintiff Elijah Ewell and all associated therewith as described.

176. But for his intentional and reckless dereliction of his duties and functions and responsibilities, Defendant party New York City Police Department Lieutenant Cesar Imbert should have known that the party Defendants Ramos, Brown, and Vassallo had no objectively reasonable, non speculative factually based suspicion to justify the stop and detention of the car service vehicle driver and  his passenger Plaintiff Elijah Ewell and no

objectively reasonable factual probable cause basis to believe that the Plaintiff engaged in any criminal conduct whatsoever or any violation of any provision of law.

177.  Rather than approve the issuance of the Desk Appearance Ticket, party Defendant New York City Police Department Lieutenant Cesar Imbert should have voided the arrest and otherwise referred the party Defendants Ramos, Brown, and Vassallo for charges and ultimately for discipline for the breach of their duties and functions as New York City police officers and their sworn duty to act in a manner and fashion consistent with the laws and Constitution of the United States.

178. Pursuant to the provisions and direction and admonition of the Desk Appearance Ticket (DAT), Plaintiff Elijah Ewell appeared at the Bronx County Criminal Court, City of New York, and the State of New York on May 17, 2021, the sixty seventh anniversary of the landmark Supreme Court decision in *Brown v. Board of Education*.

179.  Plaintiff was eventually represented by the Bronx Defenders' Office.

180.  On June 9, 2021 and without the necessity of a further appearance, the Office of the Bronx County, New York District Attorney informed Plaintiff Elijah Ewell that, relative to the February 16, 2021 arrest of Plaintiff Elijah Ewell, and after "reviewing records of the Bronx District Attorney's Office, the case against Elijah Ewell was decline to prosecute [sic] in the Complaint Room, meaning an accusatory instrument was not drafted."

181.  The written memorialization of the declination was signed by Concetta Petrillo, "Deputy Bureau Chief and Bronx County Assistant District Attorney".

182.  At the time of the stop and detention and arrest of Plaintiff Elijah Ewell on February 16, 2021 and all associated therewith (on February 16 and February 17, 2021),

Plaintiff Elijah Ewell was at the end of a five year period of probation to which he was sentenced for a weapon possession offense several years prior to the February 16, 2021 incident.

183.   Because of his youth and because of the nature of his background, Plaintiff Elijah Ewell was not given any prison time.

184.   During his period of probation, Plaintiff Elijah Ewell was exemplary in his conduct and he did not have any issues whatsoever that adversely implicated the five year probation sentence which had been imposed.

185.   Plaintiff Elijah Ewell was constantly vigilant about his activities, the people with whom he associated with, and his overall conduct as an American citizen and as a resident of the City of New York, the County of the Bronx, New York, and the State of New York.

186.   Thus and when  Plaintiff Elijah Ewell was stopped and detained and arrested on February 16, 2021 and issued a Desk Appearance Ticket (DAT) on February 17, 2021 that required him to appear in the Bronx County, New York Criminal Court in the City of New York and the State of New York, he took the affirmative step of calling his probation officer to explain the circumstances of the February 16, 2021 event rather than waiting for his probation officer, who would automatically be notified of Plaintiff Elijah Ewell's arrest, to learn of such.

187.   Plaintiff Elijah Ewell's action in this regard was reflective of the manner and fashion in which he was addressing his probationary sentence and living his life in a positive and constructive and responsible manner and fashion.

188.  Plaintiff Elijah Ewell's action in this regard also reflected his anxiety and concern about what has transpired given that he had done nothing improper or unlawful or otherwise offensive to justify the actions and conduct of party Defendant New York City police officers Ramos, Brown, and Vassallo, and inter-related thereto of party Defendant New York City Police Department Lieutenant Cesar Imbert.

189.  Plaintiff Elijah Ewell was informed by his probation officer that, because of his exemplary conduct throughout his probationary sentence and the circumstances associated with the stop and detention and arrest event, Plaintiff Elijah Ewell should not worry about such in terms of meeting the conditions of his probationary sentence and that Plaintiff Elijah Ewell should keep his probationary officer informed.

190.  Plaintiff Elijah Ewell nonetheless was concerned and worried and anxious; and, notwithstanding the assurances of Plaintiff Elijah Ewell's probation officer, Plaintiff Elijah Ewell's remained concerned, worried, and anxious throughout the period of time that the matter was pending in the Bronx County, New York Criminal Court until June 9, 2021 when the Office of the Bronx County, New York District Attorney declined to prosecute the matter.

191.  After communication to his probation officer that on June 9, 2021 the Bronx County District Attorney had declined to prosecute the case brought against him and that it had filed no legal instrument formally charging him with any crime or other offense, Plaintiff's five year probation ended on June 23, 2021

192.  As a consequence of the event of February 16, 2021 and the objectively unreasonable and unnecessary and excessive force utilized against him including but not limited to the  objectively unreasonable, unnecessary and excessively tight application of

handcuffs and the failure by the party Defendants Ramos, Brown, and Vassallo to loosen the handcuffs when Plaintiff Elijah Ewell complained about the tightness to party Defendants Ramos, Brown, and Vassallo and requested relief from the pain being inflicted by such, Plaintiff suffered physical pain and mental distress associated with such.

193.  On February 18, 2021 Plaintiff Elijah Ewell went to a pharmacy and obtained extra strength Tylenol to self medicate because of the physical pain he was continuing to feel as a consequence of the force applied to him by party Defendants Ramos, Brown, and Vassallo.

194.  Plaintiff suffered emotional anguish, mental distress, and physical pain and suffering as a consequence of the actions and conduct of party Defendants Ramos, Brown, and Vassallo and inter-related to such as a consequence of the actions and failure to act of party Defendant New York City Police Department Lieutenant Cesar Imbert associated with their conduct.

195.  The actions and conduct of the party Defendants, each individually and each collectively together and in concert and conjunction with each other and the approval of each other, and the implicated policies and practices of party Defendant City of New York as described violated Plaintiff Elijah Ewell's rights as guaranteed under the laws and Constitution of the United States, specifically: the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

196.  Plaintiff Elijah Ewell suffered injuries and damages as a consequence of the unlawful and wrong and unconstitutional conduct of the party Defendants including the

policies and practices of the municipal party Defendant city of New York; and he seeks monetary damages, costs and reasonable attorney's fees, and injunctive relief if the latter proves necessary and in the interest of justice to provide Plaintiff Elijah Ewell full and complete relief for the violation of his rights including but not limited to the referral of charges and specifications against the party Defendant line and command New York City police officers (with the appropriate due process attendant thereto).

197.  Plaintiff Elijah Ewell has no other adequate remedy at law but for the institution of this litigation.

## V.  CAUSES OF ACTION

### A.  FIRST CAUSE OF ACTION (AGAINST PARTY DEFENDANTS RAMOS, BROWN, VASSALO, AND IMBERT- FOURTH AMENDMENT UNLAWFUL STOP AND DETENTION)

198.  Plaintiff Elijah Ewell reiterates Paragraph #'s 1 through 197 and incorporates such by reference herein.

199.  Plaintiff Elijah Ewell was unlawfully stopped and detained without an objectively reasonable non speculative factually based suspicion for his stop and detention in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

200.  Plaintiff Elijah Ewell suffered injuries and damages.

### B.  SECOND CAUSE OF ACTION (AGAINST PARTY DEFENDANTS RAMOS, BROWN, VASSALLO, AND IMBERT-FOURTH AMENDMENT UNLAWFUL FALSE ARREST)

201.  Plaintiff Elijah Ewell reiterates Paragraph #'s 1 through 198 and incorporates such by reference herein.

202.  Plaintiff Elijah Ewell was unlawfully and falsely arrested without an objectively reasonable non speculative factually based probable cause predicate for his arrest in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and he Civil Rights Act of 1871, 42 U.S.C. Section 1983.

203.  Plaintiff Elijah Ewell suffered injuries and damages.

C.  *THIRD CAUSE OF ACTION THIRD CAUSE (AGAINST PARTY DEFENDANTS RAMOS, BROWN, VASSALLO, AND IMBERT-FOURTH AMENDMENTUNLAWFUL MALICIOUS PROSECUTION)*

204.  Plaintiff Elijah Ewell reiterates Paragraph #øs 1 through 203 and incorporates such by reference herein.

205.  The actions and conduct of the party Defendant New York City police officers Daniel Ramos and John Doe #øs 1 and 2 and, inter-related thereto and associated therewith, of party Defendant New York City Police Department Lieutenant Cesar Imbert were intentional, reckless, deliberately indifferent and malicious.

206.  Plaintiff Elijah Ewell was subjected to unlawful malicious prosecution in violation of  his rights as guaranteed under the Fourth Amendment to the United States Constitution  and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

207. Plaintiff Elijah Ewell suffered injuries and damages.

D.  *FOURTH CAUSE OF ACTION (AGAINST DEFENDANTS RAMOS, BROWN, VASSALLO, AND IMBERT- FOURTEENTH AMENDMENT INTERFERENCE WITH THE FAIR ADMINISTRATION OF NEWYORK STATE CRIMINAL JUSTICE SYSTEM PROCESS)*

208.  Plaintiff Elijah Ewell reiterates Paragraph #øs 1 through 207 and incorporate such by reference herein.

209.   Plaintiff Elijah was subjected to the malicious creation of false narratives by New York City police officers to cover up for their otherwise wrongful conduct; and to otherwise interfere with the Plaintiff's right to the fair administration of the criminal justice system including but not limited to the right to a fair trial.

210. Such violated the Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

211. Plaintiff Elijah Ewell suffered injuries and damages.

E.   *FIFTH CAUSE OF ACTION (AGAINST DEFENDANTS RAMOS, BROWN, VASSALLO, IMBERT-FOURTH AMENDMENT UNLAWFUL USE OF FORCE)*

212.   Plaintiff Elijah Ewell reiterates Paragraph #'s 1 through 211 and incorporates such by reference herein.

213.   Plaintiff Elijah Ewell was subjected to unlawful objectively unreasonable and unnecessary and excessive force including but not limited to the objectively unreasonable, unnecessary, and excessive application of handcuffs associated with his arrest.

214.   Plaintiff Elijah Ewell was subjected to excessive force in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

215.   Plaintiff Elijah Ewell suffered injuries and damages.

F.   *SIXTH CAUSE OF ACTION (AGAINST DEFENDANTS RAMOS, BROWN, VASSALLO, AND IMBERT- FOURTH AMENDMENT UNLAWFUL SEARCH OF PERSON AND PROPERTY)*

216.   Plaintiff Elijah Ewell reiterates Paragraph #'s 1 through 215 and incorporates such by reference herein.

217. Plaintiff Elijah Ewell was subjected to an objectively  unreasonable and unnecessary speculative  search of his  person and property in violation of rights guaranteed to him under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

218.  Plaintiff Elijah Ewell suffered injuries and damages.

G.   *SEVENTH CAUSE OF ACTION (AGAINST DEFENDANTS RAMOS, BROWN, VASSALLO, IMBERT-FOURTH AMENDMENT UNLAWFUL TERMS AND CONDITIONS OF SEIZURE)*

219.  Plaintiff Elijah Ewell reiterates Paragraph #∅s 1 through 218 and incorporates such by reference herein.

220.  Plaintiff Elijah Ewell was subjected to unreasonable terms and conditions of his stop, and seizure and custodial arrest in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

221.  Plaintiff Elijah Ewell suffered injuries and damages.

H.   *EIGHTH CAUSE OF ACTION (AGAINST DEFENDANTS VASSALLO, AND IMBERT- FOURTH AND FOURTEENTH AMENDMENTS UNLAWFUL SUPERVISORY CONDUCT)*

222.  Plaintiff Elijah Ewell reiterates Paragraph #∅s 1 through 220 and incorporates such herein.

223.  The actions and inactions of party Defendant New York City Police Department Lieutenant Cesar Imbert in his the exercise of his supervisory functions were intentional, reckless, and deliberately indifferent and racially discriminatory and violated Plaintiff Elijah Ewell∅s rights as guaranteed under the Fourth Amendment and Fourteenth

Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C.

Section 1983.

224.  Plaintiff Elijah Ewell suffered injuries and damages.

    I.   *NINTH CAUSE OF ACTION (AGAINST DEFENDANTS RAMOS, BROWN, VASSALLO, AND IMBERT - FOURTEENTH AMENDMENT RACIAL DISCRIMINATION)*

225.  Plaintiff Elijah Ewell reiterates Paragraph #⌀s 1 through 223 and incorporates

such by reference herein.

226.  Plaintiff Elijah Ewell was subjected to racially discriminatory treatment in

violation of his rights as guaranteed under the Fourteenth Amendment to the United

States Constitution and the Civil Rights Act of 1871, 42 U.S.. Section1983.

227.  Plaintiff Elijah Ewell suffered injuries and dames.

    J.  *TENTH CAUSE OF ACTION (AGAINST DEFENDANT CITTY OF NEW YORK –FOURTH AND FOURTEENTH AMENDMENTS MONELL MUNICIPAL POLICY LIABILITY)*

228.  Plaintiff Elijah Ewell reiterates Paragraph #⌀s 1 through 227 and incorporates

such by reference herein.

229.  The policies, practices and customs herein described, individually and

collectively, of the party Defendant City of New York propelled the actions and conduct

of the individual party Defendant New York City police officers Daniel Ramos, John Doe

#⌀s 1 and 2, and New York City Police Department Lieutenant Cesar Imbert, each

individually and each collectively together and in conjunction and concert with each

other and the approval of each other.

230. The policies, practices, and customs of the party  City of New York violated Plaintiff Elijah Ewell's  rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

231.  Plaintiff Elijah Ewell suffered injuries and damages.

### K.    ELEVETH CAUSE OF ACTION (AGAINST DEFEFENDANT CITY OF NEW YORK –RESPONDEAT SUPERIOR LIABILITY UNDER FEDERAL QUESTION JURISDICTION)

232.  Plaintiff Elijah Ewell reiterates Paragraph #'s 1 through 231 and incorporates such by reference herein.

233.  When the Defendant City of New York represents its police officers and other in federal civil rights litigations alleging unconstitutional actions by its officers (which representation takes place it is believed in 99.99 percent if not more of the situations where a police officer seeks representation), it is believed that it ordinarily and uniformly and as a matter of policy and practice indemnifies its police officers for any award of both punitive damages and compensatory damages.

234  It is believed that the police officer-employee executes a retainer indemnification and representation letter which requires the police officer-employee, in return for indemnification, to subordinate his or her interests to the interest of his/her employer and indemnifier óthe Defendant City of New York.

235.  It is believed, moreover, that, when a judgment is obtained against a New York City police officers for an officer's violation of an individual's federally guaranteed Constitutional and civil rights and where the police officer has been represented by the New York City Corporation Counsel's office and where the City of New York has paid the judgment of damages (compensatory and/or punitive damages), the police officer

almost never has been subjected to a New York City Police Department disciplinary hearing and/or the imposition of any discipline whatsoever; and it is believed that, when a settlement has been made in such a litigation, the police officer ordinarily is never even informed of such.

236.  It is believed, moreover, that when a judgment is obtained against a New York City police officer being represented by the New York City's Corporation Counsel's office for the violation of an individual's constitutional and civil rights, the City of New York takes no action whatsoever to address such and discipline and/or train-retrain the police officer in any form or fashion for his or her unlawful and unconstitutional conduct; and/or the City does not change those policies and practices that propelled said conduct.

237.  The City of New York is, under the circumstances, the real party in interest.

238.  The named individual Defendants are employees and agents of the City of New York and their conduct, as described, was taken in the course of their duties and functions as New York City police officers and, in their capacities as such, as agents and employees of the Defendant City of New York.

239.  Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken to the otherwise lawful performance of their duties and functions as agents and employees of the Defendant City of New York.

240.  Plaintiff Elijah Ewell is entitled to recover against the Defendant City of New York for the conduct of its named Defendant police officers *under the federal claim jurisdiction* pursuant to the doctrine of *respondeat superior*.

241.  Plaintiff Elijah Ewell suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a]   Award appropriate compensatory and punitive damages.

[b]   Award appropriate declaratory and injunctive relief.

[c]   Empanel a jury.

[d]   Award attorney's fees and costs.

[e]   Award such other relief as the Court finds is in the interest of justice.

DATED: New York, New York
           February 19, 2022

Respectfully submitted

/s/*James I. Meyerson*_____
JAMES I. MEYERSON
510 Fifth Avenue @ # 335
New York, New York 10036
(917) 570-5369
jimeyerson@yahoo.com
ATTORNEY FOR PLAINTIFF
BY:_____

Copy:
Served on appearing party Defendants
City, Ramos, and Imbert through Andrea
Osgood, via ECF